**The court incorporates by reference in this paragraph and adopts as the findings and orders of this court the document set forth below. This document was signed electronically at the time and date indicated, which may be materially different from its entry on the record.**



Russ Kendig
United States Bankruptcy Judge

Dated: 10:10 AM January 11, 2013

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| IN RE: | ) | CHAPTER 7 |
| | ) | |
| DENNIS C. ADKINS, | ) | CASE NO. 11-62177 |
| | ) | |
| Debtor. | ) | ADV. NO. 11-6084 |
| | ) | |
| BENJAMIN A. ADKINS, | ) | JUDGE RUSS KENDIG |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | |
| | ) | **MEMORANDUM OF OPINION (NOT** |
| DENNIS C. ADKINS, | ) | **INTENDED FOR PUBLICATION)** |
| | ) | |
| Defendant. | ) | |
| | ) | |
| | ) | |
| | ) | |

    This adversary proceeding arises in the chapter 7 bankruptcy proceeding of Dennis C. Adkins. Benjamin A. Adkins filed his complaint on October 24, 2011 seeking a determination of dischargeability pursuant to 11 U.S.C. § 523(a)(2)(A), (4), and (6). The matter came before the Court for trial on November 27, 2012.

    The court has jurisdiction over this case pursuant to 28 U.S.C. § 1334 and the general order of reference entered in this district on April 4, 2012. Venue in this district and division is proper pursuant to 28 U.S.C. § 1409. This proceeding is a core proceeding under 28 U.S.C. § 157(b)(2)(I). In accordance with Fed. R. Bankr. P. 7052, the court's findings of facts and conclusions of law are

1

set forth in this memorandum.

This opinion is not intended for publication or citation. The availability of this opinion, in electronic or printed form, is not the result of a direct submission by the court.

## FINDINGS OF FACT

Based on the record at trial, the court finds the following facts to be established:

Benjamin A. Adkins ("Plaintiff") is the brother of Dennis C. Adkins ("Defendant" or "Debtor"). Parties are the sons of Otis Adkins,[1] who had nine (9) children in total, including Plaintiff and Defendant.[2] Otis Adkins died intestate on September 26, 1995. Part of his estate included real property known as 3959 Hildebrant Road in Butler, Ohio ("Property"). The Property consists of sixteen (16) acres, which are mostly wooded, and contains a house, as well as several outbuildings. In July of 1996, the Property was transferred to Otis Adkins' children in equal shares as tenants in common. Plaintiff and Defendant each received a one-ninth (1/9) share of the Property. On November 16, 2012, Plaintiff received an additional one-ninth (1/9) share from his brother, Otis J. Adkins, and his wife by way of a quit claim deed. Thus, Plaintiff now holds a two-ninths (2/9) share of the Property.

By way of background, the house on the Property consists of the original structure and an addition. The entire structure was constructed by Otis Adkins and his family prior to his death. After Otis Adkins passed away, the siblings demolished and rebuilt the original portion of the house. According to the testimony presented at trial, Defendant and Jeffrey Adkins paid for the majority of the materials for this renovation, but the entire Adkins family provided the labor for it. Currently, the addition, which is now the oldest part of the house, is in complete disrepair. At least a portion of the roof on the addition has rotted and leaks badly, leading to mold growth and other water damage. There is no dispute that the addition is not habitable and is currently closed off from the original structure of the house.

Plaintiff testified that he believes that the poor condition of the house was caused by Defendant's failure to maintain the house. Due to the condition of the house on the Property, Plaintiff made a complaint to the Mansfield-Ontario-Richland County Health Department. Plaintiff complained of the trash on the Property, the lack of gutters on the house that caused water to enter the basement, the leaking roof, and the absence of a safe water supply. Defendant's testimony disputed Plaintiff's allegations, arguing that the condition of the structure and the Property generally was poor at the time of Otis Adkins' death. The testimony of Jeffrey Adkins regarding the condition of the Property at the time of Otis Adkins' death supports Defendant's testimony. In addition, Jeffrey Adkins testified credibly that in multiple instances the structure had been subjected to fire prior to Otis Adkins' death and was only repaired superficially, not

---

[1] The father of Plaintiff and Defendant is referred to as Otis Adkins. The brother of Plaintiff and Defendant is referred to as Otis J. Adkins.
[2] Some of the parties' siblings testified at the trial. These siblings include: Otis J. Adkins, Jerry Adkins, Jeffrey Adkins, and Brenda Knuckles.

properly.

As a result of Plaintiff's complaint to the health department, Defendant made repairs to the house and the well on the Property, as well as cleaned up the trash and debris on the Property. Defendant and Jeffrey Adkins both testified to numerous repairs that they made to the Property and the costs related to those repairs. Specifically, both testified that together they made and paid for repairs, including replacement of doors and gutters, rebuilding the original structure of the house, cleaning up debris on the Property, repairing the well, and replacing bathroom flooring. Both testified that these expenses totaled over $13,000.00.[3] Defendant submitted into evidence receipts totaling $16,600.07 for repairs and maintenance to the Property.[4] Plaintiff, Brenda Knuckles, Otis J. Adkins, and Jerry Adkins all testified that they paid nothing for materials or maintenance to the Property since Otis Adkins' death.

There is no dispute that at some point after Otis Adkins' death all nine (9) of Otis Adkins' children agreed that Defendant and Jeffrey Adkins, would be permitted to reside at the Property without paying rent. Presently, Defendant and Jeffrey Adkins continue to reside at the Property. From the testimony at trial, there is a dispute among the siblings over how expenses and maintenance on the Property were to be paid. Plaintiff testified that an agreement was reached among the siblings that Defendant and Jeffrey Adkins would pay the real estate taxes and maintenance expenses for the Property. Plaintiff may genuinely believe this, but the overwhelming testimony established that there was no agreement among the siblings regarding the payment of maintenance on the Property. There was an agreement that Defendant and Jeffrey Adkins could live at the Property rent free.

Otis J. Adkins testified that his understanding of the agreement was that Defendant and Jeffrey Adkins would pay the taxes if living on the Property, but that there was no agreement about maintenance expenses for the Property. Defendant, Jeffrey Adkins, Jerry Adkins, and Brenda Knuckles all testified that there was no agreement regarding the payment of taxes and maintenance on the Property. Based on the testimony at trial, the Court finds that there was no agreement between the siblings with respect to the payment of taxes or other expenses for maintenance on the Property. While what happened in fact is that Defendant and Jeffrey Adkins paid for maintenance, there was never a meeting of minds between the siblings on this issue.

Defendant and Jeffrey Adkins caused timber to be cut from the Property and received $12,623.97 for the timber. There is no dispute that Defendant did not receive permission from his siblings before causing the timber to be cut nor did he share the proceeds of the cut timber with them. Clinton Elliot, the buyer of the standing timber on the Property, testified that he selected a

---

[3] This amount includes $2,610.07 for the repairs to the well, which have not yet been paid. Both Defendant and Jeffrey Adkins testified that this expense will be paid with 2012 tax refunds.

[4] Of the $16,600.07 submitted, $11,789.13 is not in receipts. Rather it is a recollection by Defendant of materials that he purchased when he and his siblings renovated the original structure of the home with an estimate of their cost. Notably, the costs of the materials used by Defendant are current prices, not from the time when the materials were actually purchased. Notwithstanding this fact, the Court accepts this figure as a general estimate of the cost of the materials. Defendant is not seeking reimbursement for the cost of these materials. Instead, Defendant presents this estimate as proof that the costs of the materials to renovate the original structure were significant.

small number of the trees from the Property that were mature for timber. He also testified that the cut trees needed to be cut and would begin to degrade and lose value, rather than gaining further value. Finally, Mr. Elliot testified that Defendant exercised appropriate management of forest by having these trees cut for timber and that Mr. Elliot believed there were more trees with value on the Property, but Defendant wanted to be selective about what was cut. Defendant testified that he used the proceeds from the cut timber for repairs and maintenance of the Property, either to be completed or as reimbursement for previously completed maintenance and repairs.

Also with respect to the Property, Otis Adkins and his wife had entered into a lease with the Ohio Fuel Gas Company, now known as Columbia Gas Transmission, on August 10, 1966 for oil and gas rights on the Property. Plaintiff alleges that Defendant received and cashed at least one check in the amount of $92.00 from Columbia Gas Transmission, but Defendant denies such allegation. Defendant disputes receiving these proceeds. Based on the evidence admitted at trial, the Court finds that Defendant received $92.00 in proceeds from the oil and gas lease. It appears that many more payments were never cashed and were simply forefeited.

Plaintiff also testified that, based upon the records of the Richland County auditor's office, the value of the Property has decreased from $76,000.00 to $40,000.00. Plaintiff applied to have the value of the Property reduced due to its condition. He attended a hearing and presented pictures of the Property, which resulted in a reduction of the value of the Property. Plaintiff's testimony attributes the reduction in value to the condition of the Property.

Plaintiff filed his complaint seeking nondischargeability pursuant to 11 U.S.C. § 523(a)(2)(A), (4), and (6) for damages totaling $13,630.64. Specifically, at the trial, Plaintiff requested damages totaling $5,610.64 for the conversion of the timber. This figure is calculated by dividing the total proceeds received of $12,623.97 into nine (9) shares ($1,402.66 each), with two (2) shares to Plaintiff ($2,805.32), and then doubling those damages because of the conversion. Plaintiff also requested $20.00 for the oil and gas lease, which is calculated by providing Plaintiff two (2) one-ninth (1/9) shares of the $92.00 payment. Finally, Plaintiff requested $8,000.00 for the loss in value to the Property. This figure is calculated by dividing the loss in value of $36,000.00 into nine (9) shares ($4,000.00 each) and providing two (2) shares to Plaintiff.

## CONCLUSIONS OF LAW

Before the Court can consider whether Plaintiff is entitled to nondischargeability of any debt owed by Defendant, the Court must first determine whether Plaintiff is entitled to any damages.

In Ohio, one tenant in common may recover from another tenant in common his share of rents and profits received "according to the justice and equity of the case." O.R.C. § 5307.21; *accord* Cohen v. Cohen, 106 N.E.2d 77, 79 (Ohio 1952); *accord* Landrum v. Landrum, No. WD-89-59, 1990 WL 52875, 3 (Ohio Ct. App. Apr. 27, 1990); 7-50 Powell on Real Property, § 50.04[1] (2012).

In the instant matter, Defendant received proceeds totaling $12,715.97 from the cut timber and the oil and gas lease. Under the law in Ohio, as set forth above, Plaintiff is entitled to recover his share of the profits received by Defendant according to the justice and equity of the case. The facts of this case are complicated. In order for the Court to determine what share, if any, Plaintiff is entitled to recover of the proceeds received by Defendant, the Court must first look at the expenses paid by Defendant for repairs and maintenance to the Property and the lack of an agreement between the owners for the maintenance of the Property.

Having found, as discussed above, that there was no agreement between the siblings with respect to the payment of expenses on the Property, the Court must look at the applicable law in Ohio to determine who bears responsibility for maintenance and repairs of property held in a tenancy in common. When there is no agreement between cotenants regarding expenses for the property, "a cotenant in sole possession is not entitled to contributions from the other cotenants for repairs" and improvements. 7-50 Powell on Real Property, § 50.04[2]. The case law in Ohio, however, allows a cotenant to reduce profits made from the property by any sums expended for taxes and necessary improvements. Magee v. Kiesewetter, 130 N.E.2d 704, 706 (Ohio Ct. App. 1955) (quoting Airington v. Airington, 192 P. 689 (1920)); accord Whirrett v. Mott, 601 N.E.2d 525, 528 (Ohio Ct. App. 1991) (allowing reimbursement for utilities paid as a necessary expense on property); Landrum, 1990 WL 52875 at 3.

Defendant provided evidence and testimony at trial that he and Jeffrey Adkins together paid approximately $16,600.00 for maintenance and repairs to the Property since their father's death. There is no dispute that none of the other owners of the Property, besides Defendant and Jeffrey Adkins, paid for the maintenance to the Property since Otis Adkins' death. Therefore, Defendant is entitled to reduce the profits from the Property, $12,715.97, by the expenses paid for maintenance on the Property, $16,600.00. This results in a negative net income to Defendant. Given the amount that Defendant has expended on the Property compared to the proceeds received from the Property and absent responsibility by Defendant to pay these expenses, it is not in the interest of justice to require Defendant to share the proceeds with Plaintiff. Accordingly, Plaintiff is not entitled to any damages as a result of Defendant's receipt of proceeds from the cut timber and the oil and gas lease on the Property.

Plaintiff also claims that Defendant converted the timber on the Property when he caused it to be cut without permission from the other owners of the Property and without providing the other owners any share of the proceeds. "The elements of a conversion claim are: 1) plaintiff's ownership or right to possession of the property at the time of the conversion; 2) defendant's conversion by a wrongful act or disposition of plaintiff's property rights; and 3) damages." Kramer Consulting, Inc. v. McCarthy, 284 F. Supp. 2d 918, 923 (S.D. Ohio 2003) (quoting NPF IV, Inc. v. Transitional Health Servs., 922 F. Supp. 77, 81 (S.D. Ohio 1996)); accord Am. Jur. 2d (Conversion) § 2 (2012). Plaintiff bears the burden to prove by a preponderance of the evidence that Defendant "wrongfully exercised dominion and control over property in exclusion of or inconsistent with Plaintiff's rights." New Rocky Valley Farms v. Pollock, 1999 Ohio App. LEXIS 2947, 6 (Ohio Ct. App. June 23, 1999) (citing Joyce v. General Motors Corp., 551 N.E.2d

5

172 (Ohio 1990) (other citation omitted)).

There is no dispute that Plaintiff had an ownership interest in the Property at the time that the timber was cut and that Plaintiff sustained damages because he did not receive his proportional share of the proceeds from the timber. The only element of conversion that needs to be discussed is whether or not Defendant committed a wrongful act or disposition of Plaintiff's property rights by cutting the timber. The Court finds that Plaintiff failed to establish by a preponderance of the evidence that Defendant committed a wrongful act or disposition. Defendant had both an ownership interest and possessory interest in the Property when he caused the trees to be cut. The testimony at trial indicated that Defendant cut only a small number of the total trees on the Property. The cut trees were ripe for cutting and would lose value, rather than gain value, if not cut for timber at that time. Defendant practiced responsible forest management by cutting the trees. Further, Plaintiff failed to introduce any evidence or testimony to show that Defendant acted wrongfully and, thus, did not meet his burden of proof. Therefore, Defendant's action did not amount to a wrongful act or disposition by cutting the trees on the Property.

Finally, Plaintiff seeks damages for waste to the Property resulting in a reduction of value from $76,000.00 to $40,000.00. Waste is an injury to property by a person rightfully in possession but without full title to the property to the detriment of another person's interest in the same property. 78 Am. Jur. 2d (Waste) § 1 (2012); *accord* Anderson's Ohio Civil Practice, § 143.01. Waste can be either voluntary, i.e. intentional, or permissive, resulting from negligence or a failure to act. 78 Am. Jur. 2d (Waste) § 5. Damages for waste are the lesser of the diminution in value or cost of repair. Id. § 32. An action for waste in Ohio by one cotenant is allowed by statute. O.R.C. § 5307.21.

Plaintiff claims waste due to the deteriorating condition of the Property.[5] Plaintiff argues that the Property was upgraded and well-maintained before Defendant took possession of it. During Defendant's possession of the Property, the structure has been allowed to rot to the point where half of the structure is not habitable. At one point, the structure did not have running water in it. Further, the Property had an excess of trash and debris on it. These conditions led Plaintiff to file a complaint with the health department and seek a reduction in value of the Property with the county auditor. Ultimately, Defendant corrected some of the issues with the Property, but half of the structure remains uninhabitable.

The Court agrees that the condition of the Property is deplorable, but rejects Plaintiff's allegation that Defendant is at fault for its condition. From the testimony and evidence submitted at trial, the condition of the Property was poor at the time of Otis Adkins' death. The siblings worked together at different times to improve the structure on the Property, but were never able to keep the structure properly maintained. The structure had been built by Otis Adkins and his family, not by a professional. It had also been subjected to multiple fires and not properly repaired afterwards. At no time could the Property be described as in good or excellent condition.

---

[5] Plaintiff only claims waste as a result of the condition of the Property, not as a result of the cut timber. Even if Plaintiff claimed waste due to the cut timber, the Court notes that cutting timber is not waste if it is commercial timber that is cut to pay expenses associated with the property. Anderson's Ohio Civil Practice, § 143.01.

Its current condition cannot be attributed to the negligence of Defendant. Further, Defendant expended approximately $16,000.00 in attempts to improve the condition of the Property. Accordingly, Plaintiff is not entitled to any damages as a result of waste.

Even if the current condition of the Property can be attributed to the negligence of Defendant, Plaintiff failed to establish that the decrease in the value of the Property was due solely to its condition. There are numerous other reasons that the value of the Property may have declined in value from the time of Otis Adkins' death to the present, including a general decline in real estate values nationwide over the last half decade. Plaintiff may have petitioned for a decrease in the Property's value due to its condition, but failed to establish that the Richland County auditor decreased its value as a result of its condition and not for other, independent reasons.

Having found that Plaintiff is not entitled to any damages in this matter, the Court need not consider nondischargeability pursuant to 11 U.S.C. § 523(a)(2)(A), (4), and (6).

An order will be entered simultaneously with this opinion.

#   #   #

**Service List:**

Jeffrey Heck
The Heck Law Offices, Ltd.
1 Marion Avenue
Suite 104
Mansfield, OH 44903

Benjamin A Adkins
1126 Blakley Drive
Dayton, OH 45403

Charles T Robinson
3 N Main St
Richland Bank Bldg
#400
Mansfield, OH 44902-1708

Dennis C Adkins
3959 Hildebrant Rd.
Butler, OH 44822